STATE of Missouri, Respondent,

v.

Charles L. SANCHEZ, Appellant.

No. SC 87214.

Supreme Court of Missouri,
En Banc.

March 21, 2006.

Ellen H. Flottman, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, for Respondent.

PER CURIAM.[1]

### Introduction

Charles Sanchez argued with a woman with whom he was living about her decision to leave him. He held the woman and her two children hostage for several hours, but they eventually were released or escaped. During the incident, Sanchez acted nervous and paranoid, saying "that there [were] people following him ten cars back;" that "if anybody tried to come in the house he was going to burn down the house and take them out ...;" that people were "watching him;" and that "there was a torture room underneath the house" where people from California as well as people he worked with had been torturing children, including one of the children held hostage.

A jury convicted Sanchez of two counts of kidnapping, two counts of armed criminal action, one count of unlawful use of a weapon, and one count of arson in the first degree.[2] Over Sanchez's objection, the trial court incorrectly found that Sanchez was a prior and persistent offender and sentenced him to a total of 22 years in the department of corrections. The judgment is affirmed in part and reversed in part, and the case is remanded for resentencing.

### Prior and Persistent Offender

▬ If the state charged Sanchez as a "prior and persistent offender," as defined by law, and proved the charge beyond a reasonable doubt, the trial court was required to adjudge him to be such an offender based upon specific findings of fact. *State v. Stephens*, 88 S.W.3d 876, 886 (Mo. App.2002). That an offender has been convicted of more than one felony is not alone sufficient to prove that the offender is a persistent offender. Section 558.016.3 states: "A 'persistent offender' is one who has pleaded guilty to or has been found guilty of two or more felonies *committed at different times*." (Emphasis added.)

The state and Sanchez disagree as to when felonies can be considered to have been "committed at different times" for purposes of proving persistent offender status. In support of its assertion that Sanchez was a prior and persistent offender, the state offered evidence that Sanchez pleaded guilty to two firearm felonies occurring on the same date at roughly the same time. The evidence showed that on January 4, 1997, Sanchez, carrying a shotgun, entered a restaurant located in a shopping plaza. The police were notified. Sanchez left the restaurant in "an old Ford truck with a red spot ..." of paint on it. When they arrived on the scene, the police spotted the truck about 100 yards from the restaurant on the plaza parking lot. The police stopped Sanchez, removed him from the truck, patted him down, and found a handgun in Sanchez's belt.

As a result of this incident, Sanchez pleaded guilty to two separate felonies: carrying a concealed weapon and exhibiting a shotgun in an angry or threatening manner. Sanchez argues that these two felonies arose out of a single incident and cannot be the basis for finding him to be a persistent offender.

On these facts, this Court agrees. Although the statutes do not define the phrase "committed at different times," nor has this Court, felonies are not committed at different times if they are committed as

---

1. This Court transferred this case after an opinion by the Court of Appeals, Southern District, authored by the Honorable Robert S. Barney. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without further attribution.

2. See section 565.110, section 571.015, section 571.030.1(4), and section 569.040, respectively. All statutory citations are to RSMo 2000.

a part of a continuous course of conduct in a single episode. In this case, the state failed to meet its burden to prove beyond a reasonable doubt that the felonies were part of more than a single episode so as to establish that they were committed at different times. There was no evidence as to whether Sanchez left the plaza parking lot, what time interval occurred between when the restaurant was entered and the truck was stopped, when Sanchez acquired the handgun, or whether Sanchez had the handgun at the time he entered the restaurant. Therefore, the judgment as to Sanchez's status as a persistent offender is reversed, and the case is remanded for resentencing.[3]

### Expert Testimony

■ Sanchez contends that the trial court abused its discretion in granting the state's request to preclude him from presenting the defense of diminished capacity and delusional disorder. In a motion in limine, the State objected, in part, to the admission of three separate mental evaluations performed on Sanchez to evaluate whether Sanchez suffered from methamphetamine-induced delusions as a result of his history of drug abuse. The trial court sustained the motion on the basis that testimony of voluntary intoxication is not admissible to negate the mental state of an offense. *See State v. Rhodes*, 988 S.W.2d 521, 525 (Mo.App.1999). At trial, Sanchez never sought to introduce any expert testimony supporting his contention that he suffered methamphetamine-induced delusions. An offer of proof is required to allow the trial court to consider the testimony in context and to make an informed ruling as to its admissibility. *State v. Clay*, 975 S.W.2d 121, 131 (Mo. banc 1998).

Sanchez failed to take the opportunity to make such an offer of proof, and nothing is preserved for review.

■ Similarly, Sanchez's claim that he should have been allowed to introduce expert testimony regarding his defense of diminished capacity in rebuttal has no merit. He never made an offer of proof on the issue, and nothing is preserved for review.

### Testimony on Methamphetamine Use

■ The next claim is that the state should not have been permitted to elicit testimony that Sanchez may have been using methamphetamine at the time of the crime. One of the hostage negotiators gave this testimony. The state justified the testimony because otherwise the jury would not have an alternative explanation for the inference Sanchez was seeking that he was mentally ill.

■ Trial courts have broad discretion to admit or exclude evidence at trial. A reviewing court will reverse only upon a showing of a clear abuse of discretion. *State v. Chaney*, 967 S.W.2d 47, 55 (Mo. banc 1998). In this case, the state limited the testimony to stating that Sanchez's behavior was consistent with drug use. The witness explained that this fact affected his method of negotiating. He also testified that he had no idea whether Sanchez was on drugs.

In this case the testimony was admissible as a part of the sequence of events surrounding the crime in order to paint for the jury a complete and coherent picture of the offense. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994). The testimony also rebutted Sanchez's inference that he was mentally ill. The trial

---

**3.** On remand, if appropriate, the court can correct the classification of the kidnapping offense.

court's ruling is not clearly against the logic of the circumstances then before the court and is not so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.

## Prosecutor's Closing Argument

 In reviewing Sanchez's next point on appeal, the Court observes that to prevail on plain error review, Sanchez must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice results if the error is not corrected. *State v. Parker*, 886 S.W.2d 908, 917 (Mo. banc 1994). Plain error will seldom be found in unobjected to closing argument. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

 It is well settled that relief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation. *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994). Such situations rarely merit plain error review because in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995).

 In this case, the state argued in rebuttal closing argument that "if there were [irrational thoughts] you would have heard from some doctors." The argument was made in response to the repeated references defense counsel made in closing argument to Sanchez's "irrational thoughts" and state of mind. A prosecutor has considerable leeway to make retaliatory arguments at closing. A prosecutor may retaliate to an issue raised by the defense even if the prosecutor's comment would be improper. *State v. Clayton*, 995 S.W.2d 468, 479 (Mo. banc 1999). In this instance, the state's closing argument was not improper in that it was rebutting the numerous remarks made by Sanchez's counsel as to Sanchez's irrational behavior in the closing argument.

 Further, closing arguments must be interpreted with the entire record rather than in isolation. *State v. Edwards*, 116 S.W.3d 511, 536–37 (Mo. banc 2003). Sanchez fails to show this Court how these closing arguments had any decisive effect on the jury, given the overwhelming evidence of his guilt. There was no abuse of discretion in the trial court's failure to sua sponte intervene in the State's closing argument, nor is there trial court error rising to the level of a miscarriage of justice or manifest injustice. *See Edwards*, 116 S.W.3d at 535–36.

## Sufficient Evidence of Arson, First Degree

 Section 569.040.1 sets out the crime of arson, first degree:

A person commits the crime of arson in the first degree when he knowingly damages a building or inhabitable structure, and when any person is then present or in near proximity thereto, by starting a fire or causing an explosion and thereby recklessly places such person in danger of death or serious physical injury.

Sanchez asserts that there was insufficient evidence to prove the crime because there was insufficient evidence he "knowingly disregarded an unjustifiable risk that he was placing nearby persons in danger of death or serious physical injury." He argues that the only people that he put "in danger of death or serious physical injury" were the police officers and firefighters

who were on the scene and "who respond to every fire."

A directed verdict of acquittal is authorized only where there is insufficient evidence to support a guilty verdict. *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993). In this case, Sanchez told a police negotiator, "I poured gas all over the place; I'm going to torch it." Immediately thereafter the house caught on fire. The negotiator testified that he personally went to the houses on either side of Sanchez's home in order to evacuate the residents due to the possibility of gunshots and fire in the area. He testified that he felt the need to evacuate those houses because the siding on the house immediately adjacent to Sanchez's house was actually beginning to melt on the house and the officers were worried about the safety of those occupants.

Other evidence proved that after setting the house on fire and emerging from the back porch, Sanchez pointed his gun at the police officers who were waiting to apprehend him. After one of the officers fired a shot at Sanchez and missed, Sanchez dropped his gun and lay down on the concrete in a pool of water that was forming from the fire hoses. The negotiator testified that at that time the water "was probably six inches, eight inches deep" from where he was all the way to the house and that it was like a torrential downpour of water flowing on their heads from the fire hoses. He went on to state that the power lines were right over their heads and they were burning, and the insulation was melting off. He thought the power lines were going to melt and fall into the water and electrocute people.

A fire inspector testified that the siding on the home next door to Sanchez's had melted due to the fire Sanchez started. The inspector referenced several photographs showing the damage from radiant heat that was suffered by the residence next door. He noted that the house next door to Sanchez's had been in great danger of being set on fire and that once that siding has melted away and burned like that, it would not take very long for the rest of the wooden structure of the house to catch fire. He went on to reference the danger of electrocution from falling power lines as well as his belief that the fire put police officers, firefighters, and neighbors in danger of death or serious physical injury.

The foregoing testimony is sufficient evidence from which the jury could have found that Sanchez knowingly set his own home on fire and recklessly placed numerous people in danger of death or serious physical injury. The trial court did not err in denying Sanchez's motion for judgment of acquittal and in sentencing Sanchez for the commission of arson, first degree.

### Multiple Counts of Kidnapping

In his last point, Sanchez maintains his right to be free from double jeopardy was violated by his conviction on two separate counts of kidnapping with respect to the same victim. The jury found Sanchez guilty on one count that the victim was confined for the purpose of inflicting physical injury or terrorizing her and on a second count that the victim and another victim were confined for the purpose of using them as a shield or hostage. Sanchez argues that kidnapping is a continuing course of conduct and, therefore, he only committed one crime.

In *State v. French*, 79 S.W.3d 896, 898–99 (Mo. banc 2002), this Court reviewed the analysis to be used. The Double Jeopardy Clause prohibits multiple punishments for the same offense. Where multiple punishments are imposed following a single trial, double jeopardy analysis

is limited to determining whether multiple punishments were intended by the legislature. In other words, multiple punishments are permissible if the defendant has in law and in fact committed separate crimes. To determine whether the legislature intended multiple punishments, a court looks first to the "unit of prosecution" allowed by the statutes under which the defendant was charged. Only where the charging statute is silent as to the unit of prosecution must recourse be made to Missouri's general cumulative punishment statute.[4]

Sanchez was charged under section 565.110.1, which states in pertinent part that:

A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of

\* \* \*

(2) Using the person as a shield or hostage; or

\* \* \*

(5) Inflicting physical injury on or terrorizing the victim or another.

The jury convicted him of confining the woman with whom he was living for the purpose of inflicting physical injury on her or terrorizing her. The jury separately convicted him of confining the woman and her child for the purpose of using them as shields or hostages. Since the crime is defined with reference to confining "another" and there is more than one victim, section 565.110.1 allows for more than one allowable unit of prosecution. *See State v. Thompson,* 147 S.W.3d 150, 160 (Mo.App. 2004).

That the same victim is contained in both instructions does not change the analysis. That victim's inclusion in the "shields and hostages" instruction did not prejudice Sanchez. The jury was required to find that the child also was used as a shield or hostage. The instructions required two separate persons to be victimized in different ways. The duplication was mere surplusage as the name of the victim is not an element of the crime. *See State v. Bradshaw,* 81 S.W.3d 14, 23 (Mo. App.2002).

### Conclusion

The judgment as to Sanchez's status as a persistent offender is reversed; the judgment in all other respects is affirmed; and the case is remanded for resentencing.

All concur.