STATE of Missouri, Respondent,

v.

Marquicio JOHNSON, Appellant.

No. ED 98655.

Missouri Court of Appeals, Eastern District, Division Three.

June 28, 2013.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Asst. Attorney General, Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Marquicio Johnson ("Defendant") appeals from the judgment following his conviction of one count of murder in the second degree, Section 565.021 RSMo (2000),[1] two counts of abuse of a child, Section 568.060, and one count of endangering the welfare of a child in the first degree, Section 568.045. Defendant argues the trial court erred in (1) allowing Dr. Mary Case to testify about the use of beta amyloid precursor protein ("BAPP") staining in diagnosing traumatic axonal injury ("TAI") and diffuse axonal injury ("DAI"); (2) overruling Defendant's motion for acquittal on the charge of endangerment of a child because the State did not offer sufficient evidence to support the charge; and (3) finding Defendant to be a persistent offender, Section 558.016.3, because the State failed to prove Defendant's four prior felonies were "committed at different times." We correct the judgment and sentence to remove the finding that Defen-

---

1. Unless otherwise noted, statutory references are to RSMo (2000).

dant is a persistent offender. We affirm as so modified.

In November 2009, the 2–year–old victim ("Victim") moved to St. Louis to live with her mother's aunt ("Aunt") and Aunt's live-in boyfriend, Defendant. Upon moving to St. Louis, Victim had no visible injuries and was in good health. On December 15, 2009, Aunt worked an overnight shift. When she left the house, Victim was asleep and Defendant was lying in bed. No one else was in the house when Aunt left for work.

Early the next morning, Defendant tried calling Aunt as Victim was unconscious on the kitchen floor. Defendant tried calling Aunt numerous times but was unable to reach her. After Victim had been unconscious for about thirty minutes, Defendant called 911. Victim was taken to the hospital where she was pronounced dead the next day.

Victim had multiple bruises on her upper body and a second-degree burn on her left hand. She also had a fracture to the back of her skull and bleeding in the skull. At trial, the pediatrician who declared Victim dead testified these injuries would not be caused by a fall, but would be from "a knockout blow." The pediatrician further testified these injuries were not accidental. The forensic pathologist who performed Victim's autopsy testified that he believed all the injuries occurred at the same time and the injuries were consistent with Victim being struck by an iron that was recovered from the house.

Dr. Case performed her own examination of Victim's brain and eyes. Dr. Case used a BAPP stain to find tearing of the axonal processes. Dr. Case concluded this damage required the type of force seen in a motor vehicle accident and could not be the result of a short fall. Before Dr. Case testified, the court discussed the BAPP staining procedure with the parties outside the presence of the jury based on Defendant's motion *in limine* requesting the exclusion of all testimony regarding DAI. Defendant requested a *Frye* evidentiary hearing and argued that BAPP staining was not generally accepted within the scientific community. Defendant offered a 2011 article from a forensic journal ("the 2011 Article") discussing preliminary findings suggesting BAPP staining on infants could show signs of trauma where no trauma had occurred. The trial court found the 2011 Article did not cast doubt on the BAPP staining procedure, denied Defendant's motion *in limine* and request for a *Frye* hearing, and allowed Dr. Case to testify.

The jury found Defendant guilty of murder in the second degree, class A felony abuse of a child, class C felony abuse of a child, and endangerment of a child. Prior to trial, the court had found Defendant was a prior and persistent offender because Defendant had previously pleaded guilty to four felonies. Each of those felonies was a separate charge of burglary of a motor vehicle[2] in Tennessee arising from Defendant's actions on the same day in 1996. The trial court sentenced Defendant to twenty-five years of imprisonment for murder in the second degree, twenty-five years of imprisonment for class A felony abuse of a child, and seven years of imprisonment for endangerment of a child, all three sentences to run concurrently, plus seven years of imprisonment for class C felony abuse of a child to run consecutively

---

**2.** In Tennessee, a person commits burglary of a motor vehicle if, without the effective consent of the property owner, he enters a motor vehicle with the intent to commit a felony, theft, or assault, or commits or attempts to commit a felony, theft, or assault. Tenn.Code Section 39–14–402(a)(4).

for a total of thirty-two years of imprisonment. This appeal follows.

For his first point, Defendant argues the trial court abused its discretion in denying Defendant's motion *in limine,* denying Defendant's request for a *Frye* evidentiary hearing, and allowing Dr. Case to testify about using BAPP staining to diagnose TAI and DAI. We disagree.

A trial court has broad discretion to admit or exclude evidence at trial, and the trial court's ruling will be reversed only if the court clearly abused its discretion. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). Abuse of discretion is when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.*

Missouri courts follow the test articulated in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), when considering the admission of scientific evidence. *State v. Daniels,* 179 S.W.3d 273, 281 (Mo.App. W.D.2005). To admit the testimony of an expert witness or the results of scientific procedures in a criminal case, the testimony must be based on scientific principles that are generally accepted in the relevant scientific community. *Id.* When there is doubt as to whether a particular procedure has general acceptance in the relevant scientific community, the State has the burden of proving the procedure has such acceptance. *State v. Endicott,* 732 S.W.2d 239, 241 (Mo.App.S.D.1987). Whether a procedure has gained acceptance in the relevant field and is admissible scientific evidence is established in a *Frye* hearing; that is, a hearing held outside the presence of a jury. *Daniels,* 179 S.W.3d at 281. The failure to hold a *Frye* hearing does not require reversal unless the evidence was improperly admitted because there was insufficient evidence to prove that the scientific evidence had gained general acceptance in the scientific community. *State v. Keightley,* 147 S.W.3d 179, 187 (Mo.App. S.D.2004).

Defendant challenged the admissibility of Dr. Case's testimony regarding the use of BAPP staining to diagnose TAI and DAI based on the 2011 Article. Outside the presence of the jury, the trial court discussed the contents of the article with the parties. The trial court specifically mentioned several parts of the article stating it is based on preliminary observation, not a systematic study, and serves to caution others that axonal injuries in infants are not per se evidence of trauma. The 2011 Article does not cast doubt upon the BAPP staining procedure itself, but cautions others as to the conclusions they reach when reviewing BAPP staining on infants. The court concluded that the article did not cast doubt upon the general acceptance of BAPP staining in the scientific community and a *Frye* hearing would therefore be unnecessary.

The trial court revisited the BAPP staining issue the next day because the court was concerned it had assumed BAPP staining was generally accepted in the scientific community. The State offered the transcript from a 2009 case that held a *Frye* hearing on BAPP staining. Based on the testimony in this transcript, the trial court concluded that BAPP staining was a procedure generally accepted in the scientific community. The court then restated its conclusion from the previous day that the 2011 Article did not negatively affect the procedure's general acceptance in the scientific community.

Because the interpretation of BAPP staining results was arguably in question as a result of the 2011 Article, the trial court allowed Defendant to use that article in its cross-examination of Dr. Case. During cross-examination, Dr. Case explained

that the 2011 Article discussed BAPP staining in the nerve roots of infants. Dr. Case stated she does not consider the nerve roots as part of her protocol for determining whether trauma occurred, but looks at BAPP staining of the cervical spine instead.

■ Based on this record, a *Frye* hearing was not necessary to admit Dr. Case's testimony on BAPP staining. The 2011 Article did not suggest that the BAPP staining procedure should no longer be followed, but merely discussed how to interpret the staining results of nerve roots in infants. The trial court reviewed evidence showing BAPP staining is a procedure with general acceptance in the scientific community and the 2011 Article did not cast any doubt on that conclusion.

The trial court did not err in denying Defendant's motion *in limine,* denying its motion for a *Frye* hearing, or allowing Dr. Case to testify regarding BAPP staining in diagnosing TAI or DAI. Point denied.

For his second point, Defendant argues the trial court erred in overruling Defendant's motion for acquittal on the charge of endangerment of a child because the State did not offer sufficient evidence to support the charge. We disagree.

■ In a sufficiency of the evidence challenge, we review whether there was sufficient evidence, taken in the light most favorable to the State, such that any reasonable juror could find the Defendant guilty of all essential elements of the crime beyond a reasonable doubt. *State v. Nash,* 339 S.W.3d 500, 508–09 (Mo. banc 2011). We accept as true all evidence favorable to the State and all reasonable inferences therefrom. *Id.* at 509.

■ The elements of endangerment of a child in the first degree are (1) the defendant engaged in conduct; (2) in so doing, the defendant created a substantial risk to the life, body, or health of a child; (3) the victim was less than seventeen years old; and (4) the defendant acted knowingly with regard to the facts and circumstances. *State v. Short,* 186 S.W.3d 828, 830–31 (Mo.App.E.D.2006). A knowing failure to obtain adequate medical care can support a conviction for endangerment of a child when the failure to act creates a substantial risk to the life, body, or health of a child. *State v. Mahurin,* 799 S.W.2d 840, 843 (Mo. banc 1990).

■ Defendant argues there was insufficient evidence that he knowingly created a substantial risk to Victim's life, body, or health. However, Defendant's argument is based on evidence taken in the light most favorable to him; that is, that Defendant called Aunt immediately upon learning Victim was unconscious and waited only eleven minutes before he called 911. We must consider the evidence in the light most favorable to the State, however. In the light most favorable to the State, the evidence shows Victim was unconscious for thirty minutes before Defendant called 911. A reasonable juror could find that an unconscious child requires immediate medical attention and could further find, beyond a reasonable doubt, that waiting thirty minutes before calling 911 creates a substantial risk to the life and health of the child.

Therefore, the State offered sufficient evidence to obtain a guilty verdict for endangerment of a child in the first degree and the trial court did not err in overruling Defendant's motion for acquittal. Point denied.

■ For his third point, Defendant argues the trial court erred in finding Defendant to be a persistent offender, Section 558.016.3, because the State failed to prove Defendant's four prior felonies were "committed at different times." We agree.

We review a trial court's rulings on issues of law *de novo*. *State v. Torello*, 334 S.W.3d 903, 905 (Mo.App.E.D.2011).

Section 558.016.3 defines a persistent offender as one "who has pleaded guilty or has been found guilty of two or more felonies committed at different times." Section 558.016.3. Courts may infer that prior felonies were committed at different times when the record supports a finding beyond a reasonable doubt that the prior felonies were committed at different times. *State v. Bourrage*, 175 S.W.3d 698, 708 (Mo.App.E.D.2005). Felonies are not committed at different times if they are committed as a part of a continuous course of conduct in a single episode. *State v. Sanchez*, 186 S.W.3d 260, 263–64 (Mo. banc 2006). Felonies occurring at the same location and within minutes of each other can support a single-episode inference. *Torello*, 334 S.W.3d at 906.

The persistent offender statute requires the State to prove a defendant's prior felonies were committed at different times. *Sanchez*, 186 S.W.3d at 264. In *Sanchez*, the defendant was improperly sentenced as a persistent offender because his two prior felonies for carrying a concealed shotgun and exhibiting a shotgun in an angry or threatening manner were part of a single episode; the defendant exhibited the shotgun in a restaurant and when the police arrived, he had the shotgun concealed on his person. *Id.* at 263. Because the State failed to meet its burden to prove beyond a reasonable doubt that the felonies were not part of a single episode, the Court reversed the trial court's judgment as to the defendant's status as a persistent offender.

Similarly here, the State did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant's four Tennessee felonies of burglary of a motor vehicle occurred at different times. It is unclear whether Defendant entered the four vehicles as part of a continuous action or whether the felonies occurred as separate and discrete offenses. It is quite plausible, in fact, that all four motor vehicles were in the same location and it is further plausible that Defendant entered all four vehicles with the intent to commit a felony, theft, or assault over a very short time period. This version of events would support a single-episode inference and, without further evidence from the State, creates a reasonable doubt that Defendant committed these felonies "at different times." Because the State failed to meet its burden, labeling Defendant a persistent offender was in error.

Defendant acknowledges that his sentences were within the range of punishment without a persistent offender finding. When a defendant's sentence is not enhanced by an erroneous finding of persistent offender status, the defendant is not prejudiced and we may correct the judgment by deleting the finding that defendant was a persistent offender. *State v. Adams*, 350 S.W.3d 864, 868 (Mo.App.E.D. 2011).

The judgment and sentence is corrected by removing the finding that Defendant is a persistent offender. As modified, the judgment is affirmed.

ROY L. RICHTER, J. and ANGELA T. QUIGLESS, J., concur.