

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32862 |
| | ) | |
| JOANIE DANIELLE FOWLER, | ) | **Filed: June 26, 2014** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David A. Dolan, Circuit Judge

**AFFIRMED**

Joanie Danielle Fowler ("Defendant") appeals from her conviction and sentence for one count of first-degree child endangerment. *See* § 568.045.1.[1] Defendant raises two points on appeal: (1) there was insufficient evidence to support her conviction and (2) the trial court abused its discretion when it admitted evidence of alleged prior misconduct. We disagree with her arguments and affirm the trial court's judgment.

### Factual and Procedural Background

At the time of the events giving rise to the charge in this case, Defendant had been living with her boyfriend, Michael Dillon Taylor ("Taylor"), for approximately two months in his trailer. Defendant's three small children from

---

[1] All statutory references are to RSMo Cum. Supp. (2009).

prior relationships, including Victim who was about two years old, also lived with the couple.

On September 30, 2009, sometime around 6:00 in the morning, Defendant awoke to the sound of Victim crying. She looked into the living room where the children were sleeping on a futon. Taylor was holding Victim and patting her on the back, so Defendant lay back down. At some point Victim stopped crying. A short time later, Defendant saw Victim limp and unconscious in the living room, and saw a hand print on Victim's face and a bruise on her temple.

Defendant asked Taylor what happened. Taylor admitted hitting Victim in the face. Defendant lay down with Victim for a little while and tried repeatedly to wake her up. Victim had difficulty breathing, then stopped breathing at which time Defendant began cardio pulmonary resuscitation ("CPR") as she was trained as a certified nurse's assistant. Defendant listened to Victim's heart; sometimes it raced and sometimes it was very slow. Victim's pulse disappeared, but Defendant was able to get it back. Defendant told Taylor they needed to take Victim to the hospital, but Taylor kept repeating he was going to jail, and he did not want to go to jail. Defendant and Taylor discussed what they would tell authorities had been the cause of Victim's injuries.

At 6:54 a.m. Defendant and Taylor called Defendant's father. They then called Taylor's mother. Taylor's mother came to the home. Defendant's father called back and told Defendant she needed to call 911. Defendant called 911 between 7:10 and 7:20 a.m.

Chris Massey ("Massey"), a firefighter with the Wardell Fire Department and a trained emergency medical technician, was the first to arrive on the scene. Taylor led Massey into the home where Massey found Victim lying on the floor in the master bedroom. When Massey realized Victim was not breathing and did not have a pulse, he told Defendant to call 911 again to request a medical helicopter. Massey immediately started CPR.

Massey then asked Defendant how long Victim had been in this condition. Defendant stated Victim "had been breathing strangely or funny off and on for about an hour." As he treated Victim, Massey noticed "some minor abrasions and discoloration to the left side of her face." Massey asked what had happened, and Taylor stated "they had been in an ATV accident earlier that morning."

About ten minutes later, an ambulance arrived. The paramedics took Victim to the ambulance. Victim was "[u]nconscious, unresponsive, pulseless, [and] apneic." The paramedics intubated Victim to help her breathe and gave her medications to assist her heart. The paramedics were able to get a pulse back, but they were never able to get Victim to breathe on her own.

Lieutenant Ryan Holder ("Lieutenant Holder") of the Pemiscot County Sheriff's Department arrived on the scene about the same time as the ambulance. Defendant told Lieutenant Holder that Victim had fallen off a four-wheeler motor vehicle. Lieutenant Holder observed Victim and saw what appeared to be a hand print on Victim's face as if Victim had been slapped or hit. Lieutenant Holder told Defendant the injuries did not seem consistent with a four-wheeler accident. Ultimately, Defendant told Lieutenant Holder she had not been honest with him.

3

A medical helicopter arrived around 8:00 a.m., and Victim was flown directly to Le Bonheur Children's Hospital in Memphis, Tennessee. Dr. Karen Lakin ("Dr. Lakin") consulted on the treatment of Victim. When Dr. Lakin examined Victim, Victim "was in extremely critical condition." Victim had deep bruising on her face and forehead. She also had numerous bruises on her back. Victim "had some very striking linear marks across" the left side of her face. The nature of the injuries was suggestive of abuse. Based on her examination of Victim and her review of x-ray and radiology findings, Dr. Lakin diagnosed Victim with subdural hemorrhage and cerebral edema. On October 3, 2009, Victim died of her injuries.

Defendant was charged with first-degree endangering the welfare of a child "by failing to contact medical help for at least 30 minutes after knowing that [Victim] had suffered a head injury." On April 29 - 30, 2013, Defendant was tried by a jury and found guilty. The trial court sentenced Defendant to seven years incarceration. Defendant appeals.

## Discussion

### Point I: There Was Sufficient Evidence to Support the Conviction

In her first point, Defendant argues there was insufficient evidence to support her conviction. Specifically, Defendant states "there was insufficient evidence from which a juror could find beyond a reasonable doubt that [Defendant] 'knowingly' created a 'substantial risk' to [Victim's] life or body or health when she did not call 911 right away, and instead made attempts to revive [Victim] by herself, and then called her parents for help, nor was there evidence that there was an actual or practically certain risk of danger to the child by this

4

delay or that if [Defendant] had called 911 sooner, that the circumstances would have changed." These arguments are without merit because they ignore the standard of review.

"In a challenge to the sufficiency of evidence at trial, this [C]ourt's role is limited to a determination of whether the state presented sufficient evidence from which a reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." *State v. Buhr*, 169 S.W.3d 170, 175 (Mo. App. W.D. 2005). In conducting such review, this Court views the evidence in the light most favorable to the jury's verdict, rejecting all contrary evidence and inferences. *Id.*

"The elements of endangerment of a child in the first degree are (1) the defendant engaged in conduct; (2) in so doing, the defendant created a substantial risk to the life, body, or health of a child; (3) the victim was less than seventeen years old; and (4) the defendant acted knowingly with regard to the facts and circumstances." *State v. Johnson*, 402 S.W.3d 182, 187 (Mo. App. E.D. 2013); § 568.045.1. In the context of this statute, substantial means "not seeming or imaginary" and risk means "the possibility of loss, injury, disadvantage or destruction." *State v. Rinehart*, 383 S.W.3d 95, 101 (Mo. App. W.D. 2012) (quoting *State v. Brock*, 113 S.W.3d 227, 232-33 (Mo. App. E.D. 2003)). Additionally, a person acts knowingly:

    (1)    With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

    (2)    With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 562.016.3. "There is no bright line test to determine whether or not a person's actions knowingly create a substantial risk to the health of a child." *Rinehart*, 383 S.W.3d at 103. Rather, the courts consider the totality of the circumstances of each case. *Id.*

"A knowing failure to obtain adequate medical care can support a conviction for endangerment of a child when the failure to act creates a substantial risk to the life, body, or health of a child." *Johnson*, 402 S.W.3d at 187. A defendant's knowledge is usually inferred from circumstantial evidence, and the jury "may also make inferences regarding a defendant's level of awareness based upon the child's appearance." *Rinehart*, 383 S.W.3d at 103. In fact, in *Johnson*, the Eastern District of this Court held that "[a] reasonable juror could find that an unconscious child requires immediate medical attention and could further find, beyond a reasonable doubt, that waiting thirty minutes before calling 911 creates a substantial risk to the life and health of the child." 402 S.W.3d at 187.

Here, as in *Johnson*, there was ample evidence from which a rational juror could find Defendant knowingly created a substantial risk to Victim's life, body, or health. Defendant found Victim unconscious and limp with a handprint on her face. Defendant knew Taylor had struck Victim. Victim stopped breathing. Defendant recognized the Victim was hurt and told Taylor they needed to take Victim to the hospital. Yet, instead of getting immediate medical attention for Victim, Defendant delayed and helped Taylor create a story to hide his culpability. Furthermore, the injury occurred around 6:00 a.m., but the 911 call was not made until sometime between 7:10 and 7:20. This evidence was

6

sufficient to show Defendant knew Victim needed medical attention but delayed her efforts to seek that attention for at least thirty minutes.

Additionally, the expert testimony presented at trial showed the delay in obtaining medical care caused additional risk to Victim. Dr. Lakin testified cerebral edema is related to subdural hemorrhage and is "exacerbated over time." She further testified it is very important for a child with injuries as severe as Victim's to receive immediate medical attention and, that with early medical attention, the complications associated with subdural hemorrhage and cerebral edema can be limited by use of surgeries or medicines. However, in this case, Victim was showing signs of brain stem compression when she arrived at the hospital. "[A]t that point it is very difficult or impossible to reverse[.]" Dr. Lakin stated a delay of even a few minutes can make a difference in the outcome. She further opined that if 911 had been called earlier it probably would have made a difference in the outcome of Victim's case. This testimony demonstrated that the repercussions of Defendant's delay in calling 911 were "not seeming or imaginary" and increased the possibility of loss, injury and disadvantage. *See **Rinehart***, 383 S.W.3d at 101. Thus, there was sufficient evidence to show Defendant knowingly engaged in conduct which caused a substantial risk to Victim's life, body, or health.

In support of her argument to the contrary, Defendant first relies on Dr. Lakin's testimony that it was possible the outcome would have been the same even if Defendant had called 911 immediately. This argument is problematic for two reasons. First, it ignores the standard of review. The testimony upon which Defendant relies is contrary to the verdict, so it must be disregarded. *See **Buhr***,

7

169 S.W.3d at 175.  Second, the argument misconceives the nature of what the State was required to prove.  The State was not required to prove Defendant's actions caused Victim's death.  *See* **State v. Kuhn**, 115 S.W.3d 845, 849 (Mo. App. E.D. 2003) ("The statute does not require severe injuries that endanger a child's welfare, but rather that the act of the defendant herself creates a substantial risk of harm.").  Rather, the State was required to prove risk, *i.e.*, the *possibility* of loss, injury, or disadvantage.  **Rinehart**, 383 S.W.3d at 101.  Dr. Lakin's testimony that it was likely there would have been a better result if medical attention had been provided earlier supported a conclusion that Defendant's act created a possibility of loss, injury, or disadvantage in the treatment of Victim.

There was sufficient evidence to show Defendant knowingly created a substantial risk to Victim's life, body, or health.  Defendant's first point is denied.

### Point II:  Alleged Prior Bad Acts Evidence

In her second point, Defendant challenges the admission of evidence showing Taylor had previously struck one of Defendant's other children.  This point is without merit because the evidence did not definitely associate Defendant with another crime.

Appellate review of a trial court's decision with respect to the admission of evidence is for abuse of discretion.  **State v. Middlemist**, 319 S.W.3d 531, 540 (Mo. App. S.D. 2010).  An abuse of discretion has occurred when the trial court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to indicate a lack of careful consideration.  **State v. Turner**, 242 S.W.3d 770, 777 (Mo. App. S.D. 2008).  "If reasonable persons can differ

8

about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* (quoting *State v. Biggs*, 91 S.W.3d 127, 133 (Mo. App. S.D. 2002)).

The following additional facts are relevant to the resolution of this point. On October 3, 2009, Defendant participated in a videotaped interview with authorities which included a statement by Defendant that Taylor had whipped one of Defendant's children in the past. Prior to trial, Defendant filed a motion in limine seeking to exclude the portion of the video which discussed Taylor's act of whipping Defendant's other child. The trial court overruled the motion.

The video was played for the jury at trial. Most of the interview focused on Defendant's description of the events of the morning of September 30, 2009. Near the end of the hour-long interview the officer asked Defendant if she had ever seen Taylor discipline the children. Defendant stated that one time, Taylor had whipped one of Defendant's other children with a belt, and the whipping left a bruise. Defendant said she told Taylor he had hit the child too hard, and Taylor agreed to never do it again. Contrary to Defendant's argument, this evidence did not constitute evidence of other misconduct.

A criminal defendant "has 'the right to be tried only on the offense charged.'" *State v. Ellison*, 239 S.W.3d 603, 606 (Mo. banc 2007) (quoting *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998)). For this reason, "[t]he general rule is that evidence of other crimes cannot be used to show that the defendant has a propensity to commit crime." *Middlemist*, 319 S.W.3d at 541. However, "[t]o violate the rule prohibiting evidence of other crimes or misconduct by the accused, the evidence must show the accused committed, was

9

accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." **State v. Ponder**, 950 S.W.2d 900, 911-12 (Mo. App. S.D. 1997).

Here, the evidence about which Defendant complains did not associate Defendant with any crime. Defendant told Taylor he had hit the other child too hard in order to protect that child from any further discipline of that sort. Nothing in the evidence suggests the other child's bruises needed medical attention, so Defendant's statements about the incident were not evidence of Defendant endangering the welfare of a child. *See* **State v. Wilson**, 920 S.W.2d 177, 179 (Mo. App. W.D. 1996) (holding there was insufficient evidence of child endangerment based on failing to seek medical attention for a child where the child suffered bruising but was later examined and doctors determined the child did not need further treatment). This evidence did not suggest Defendant endangered the other child. The statements about Taylor's actions were not evidence of another crime or bad act committed by Defendant, so the trial court did not abuse its discretion in admitting them.

Defendant's second point is denied.

### Decision

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. - OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

DON E. BURRELL, J. - CONCURS

10