**STATE of Missouri, Respondent,**

v.

**Deandre RODDY, Appellant.**

**Nos. WD 51694, WD 53550.**

Missouri Court of Appeals, Western District.

Dec. 16, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1998.

Application for Transfer Denied March 24, 1998.

---

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel G. Cierpiot, Asst. Atty. Gen., Jefferson City, for respondent.

Before HOWARD, P.J., and BRECKENRIDGE and HANNA, JJ.

HOWARD, Presiding Judge.

Deandre Roddy appeals from his convictions of one count of murder in the first degree, § 565.020, RSMo 1994, one count of robbery in the first degree, § 569.020, RSMo 1994, one count of kidnapping, § 565.110, RSMo 1994, and three counts of armed criminal action, § 571.015, RSMo 1994. Roddy claims that the trial court submitted an erroneous instruction to the jury, and that the trial court erred by overruling his challenge

to the State's use of a peremptory strike to remove a black woman from the jury panel. Roddy also appeals from the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing, claiming that his trial counsel was ineffective for not allowing him to testify at his trial.

The convictions are affirmed on direct appeal, but the motion court's judgment denying Roddy's Rule 29.15 motion is reversed and remanded for a hearing on Roddy's claim that his counsel prevented him from testifying at trial.

Just after midnight on July 15, 1993, Trent Crane walked to his truck after closing the gas station where he worked in Kansas City, Missouri. Roddy, along with his accomplices, Timothy McDaniel, Willie Starr, Anthony Nimrod, and Marvel Lowe, were waiting for Crane outside the gas station with the intention of stealing his truck. After Crane turned off the alarm on his truck, Roddy and Lowe ran up to him and, after ordering Crane into the truck at gunpoint, entered the truck from the passenger side. Crane was ordered to drive to Swope Park, while Roddy's remaining accomplices followed in one of the other cars.

When they reached the park, Roddy and McDaniel walked Crane to a grassy area away from the cars. Roddy was carrying a .32 caliber handgun and McDaniel was carrying a .22 caliber handgun. Roddy and McDaniel each shot Crane multiple times, and Crane died of his wounds.

Roddy was brought to trial twice in connection with this incident. In the first trial, Roddy was found guilty of first-degree robbery, kidnapping, and two counts of armed criminal action. The jury could not agree on the homicide count and the remaining count of armed criminal action, and the trial court declared a mistrial. Roddy was then retried and found guilty on both remaining counts.

Roddy's first point on direct appeal concerns the verdict-directing instruction for first-degree murder which the trial court submitted to the jury. Roddy contends that the instruction did not require the jury to unequivocally find that he had deliberated about causing Crane's death.

■ Roddy acknowledges that his counsel did not object to this instruction or raise this issue in his motion for a new trial, and therefore he seeks review on the basis of plain error. Instructional error rarely rises to the level of plain error. *State v. Brokus*, 858 S.W.2d 298, 302 (Mo.App. E.D.1993). To prevail on a claim of plain error with respect to an instruction, a defendant must show more than mere prejudice; a defendant must show that the jury was misdirected in a way that caused manifest injustice or a miscarriage of justice. *Id.*

■ The challenged instruction, which followed MAI–CR 3d 313.02 as modified by MAI–CR 3d 304.04, read as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 15, 1993, in the County of Jackson, State of Missouri, the defendant or other persons caused the death of Trent Crane by shooting him, and

Second, that defendant or other persons knew or were aware that their conduct was practically certain to cause the death of Trent Crane, and

Third, that defendant or other persons did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the death of Trent Crane, the defendant aided or encouraged other person [sic] in causing the death of Trent Crane and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, then you will find the defendant guilty of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find defendant guilty under Count I of Murder in the First Degree,

you will return a verdict finding him guilty of Murder in the First Degree.

Specifically, Roddy complains of Paragraph Fourth, claiming that it is ambiguous in that the phrase "did so" could just as easily refer to "with the purpose of promoting or furthering the death of Trent Crane" as "aided or encouraged other person [sic] in causing the death of Trent Crane." Therefore, Roddy argues, the instruction does not require an unequivocal finding that he deliberated about causing Crane's death. However, Roddy's claim of ambiguity is without merit, as it is a contortion of the common-sense meaning of the paragraph.

■ Roddy also complains that the disjunctive use of "defendant or other persons" in Paragraphs First, Second, and Third allowed the jury to "mix and match" among the elements by allowing them to find that "other persons" committed some elements and that Roddy committed others, and by not requiring the entire jury to find that the same person or persons committed any single element. However, Roddy's argument ignores the rule that it is sufficient that all jurors ultimately agree on their ultimate conclusion that the defendant is guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged. *State v. Hill,* 884 S.W.2d 69, 74–75 (Mo.App. S.D.1994). Point denied.

■ Roddy's second point on direct appeal involves a claim of error in his first trial. Roddy contends that the trial court erred by overruling his challenge to the State's use of a peremptory strike to remove a black woman from the jury panel. Roddy argues that the State's proffered explanation for its strike was pretextual and motivated by race.

Roddy challenged the peremptory strike on the basis of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the State explained its peremptory strike of the black venirewoman as follows:

[S]he's had a nephew in the jail in the past, but even more important than that, she works with the housing authority, and you know, she's had dealings with our office through our drug unit, and primarily that's the biggest reason. We're dealing with someone who I'm thinking has a lot to do with people who are being rehabilitated on drugs and things like that, and that's not someone that I want on the jury.

The State's explanation prompted the following exchange:

[DEFENSE COUNSEL]: I guess my response would be that she didn't say anything like that. I don't know specifically what her dealings were, but she didn't say—I don't think that she actually deals with people—I got the impression she was an administrator.

[THE COURT]: Well, I remember she did work with the housing authority. I don't remember the details about her work.

[PROSECUTOR]: She specifically stated that she did work with—come in contact with our drug task force or the drug sales tax quite heavily, and that's what they do. That's what their whole purpose is.

Following this exchange, the trial court stated, "Well, she does work for the housing authority, and no one else—I guess does work or have contact with your office more than anyone else would, so I'm going to find that's a race neutral reason, not pretextual."

■ Missouri cases have held that once a defendant raises a *Batson* challenge, the State is required to offer a race-neutral explanation for the strike. *State v. Johnson,* 930 S.W.2d 456, 460 (Mo.App. W.D.1996). The State's explanation need not be plausible or persuasive, and it is presumed to be race-neutral unless a discriminatory intent is inherent in the explanation. *State v. Coleman,* 949 S.W.2d 137, 145 (Mo.App. W.D.1997). Once the State offers its race-neutral explanation, the burden of production shifts back to the defendant to show that the proffered race-neutral explanation is pretextual and that the strikes were racially motivated. *Johnson,* 930 S.W.2d at 460. Defense counsel must present evidence or specific analysis showing that the State's explanation is pretextual, and cannot simply rely on conclusory allegations that the real motivation for the strike was racial in nature. *Id.*

 A trial court's findings on a *Batson* challenge are entitled to great deference because its decision depends largely on the evaluation of intangibles such as credibility and demeanor. *Id.* at 461. We will not set aside the court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made on the evaluation of the entire evidence. *Id.*

In this case, the State met its burden of providing a race-neutral explanation, and the defendant failed to meet his burden to demonstrate that the prosecutor's explanation was pretextual. The trial court did not clearly err in finding that the explanation was not pretextual. Point denied.

In his sole point on appeal from the denial of his Rule 29.15 motion, Roddy claims that his trial counsel was ineffective for refusing to allow him to testify on his own behalf at his second trial. Roddy contends that the motion court erred by denying this claim for relief without an evidentiary hearing.

In his Rule 29.15 motion, Roddy alleged that he advised his counsel that he wanted to testify at trial, but his counsel did not allow him to do so. The motion also described what his trial testimony would allegedly have been, and argued there was a reasonable probability that the outcome of the trial would have been different if he had testified. The motion therefore avoided the infirmities addressed in *State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993).

The record is devoid of any indication as to whether Roddy elected to waive his right to testify. Therefore, the case should be remanded to the motion court for the limited purpose of determining whether Roddy voluntarily waived his right to testify at trial. *State v. Fanning,* 939 S.W.2d 941, 949–50 (Mo.App. W.D.1997).

The convictions are affirmed on direct appeal, but the motion court's judgment denying Roddy's Rule 29.15 motion is reversed and remanded for a hearing on Roddy's claim that his counsel prevented him from testifying at trial.

All concur.