STATE of Missouri, Respondent,

v.

Tracy KING, Appellant.

Tracy King, Appellant,

v.

State of Missouri, Respondent.

Nos. 67412, 74786.

Missouri Court of Appeals, Eastern District, Division Five.

April 13, 1999.

S. Paige Canfield, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

KENT E. KAROHL, Judge.

This is a consolidated appeal after convictions and sentencing in 1994 on charges of two counts of robbery in the second degree, section 569.030 RSMo 1986[1], two counts of assault in the second degree, section 565.060, and two counts of felony stealing, section 570.030. The state charged robbery in the second degree but the jury found Defendant, Tracy King, guilty of the lesser included offenses. He appeals after the trial court sentenced him, as a prior and persistent offender, to serve thirty years for each of the robbery in the second degree convictions and twenty years on each of the other counts.

---

1. All statutory citations are to RSMo 1986 unless otherwise indicated.

The sentences on the two robberies were made consecutive and the remainder of the sentences to run concurrently for a total of sixty years imprisonment.

In his direct appeal, Defendant argues: (1) insufficient evidence to support a conviction of one count of felony stealing; (2) insufficient evidence to support one count of robbery in the second degree; and, (3) plain error when the trial court submitted the state's verdict directors without appropriate definitions. In his appeal of denial of Rule 29.15 relief, Defendant argues he is entitled to an evidentiary hearing. We affirm.

The state charged felony stealing in Count IX. The evidence supports finding the following facts. On October 23, 1993 Defendant stole approximately fifteen panes of antique, custom-made stained glass windows from the apartment building he occupied. The windows were about sixty years old. Edgar Neidel, the owner and landlord, testified that he searched antique shops for replacement windows, but found none with the same windows. The replacement cost for lesser quality was $2,655. Thus, he spent $2,655 to replace a door and colored glass windows.

The state charged felony stealing in Count V. The evidence supports finding the following facts. On October 25, 1993 Defendant drove a stolen red pickup truck, the subject of Count VIII, to the parking lot of a Schnuck's store. He pulled his truck next to Edith Mertzlufft, who had finished her shift and was pushing a cart of groceries towards her car. He reached outside the driver's side window, grabbed the strap of her purse and part of her sweater, and drove away as she hung on. When the police recovered the purse, no more than $20 was missing.

The state charged robbery in the second degree and assault in the second degree, respectively, in Counts VI and VII. The evidence supports finding the following facts. On October 25,1993 Defendant drove the pickup truck through a Ponderosa parking lot. An elderly woman, Bertha Young, and her daughter exited the restaurant. Defendant hit Young with the driver's side of the truck, she fell and was dragged by the truck. He drove away with Young's purse, took $20 in cash and threw the purse out the window

several blocks away. As he left, Young heard her daughter say, "Hey, you hit my mother." Young lost consciousness and was taken to the hospital where she remained for several weeks. Her hip was broken in four places and she fractured her left shoulder. She had surgery to place a screw in her hip. She wore a sling, had therapy, now uses a cane and walks with a limp.

The state charged robbery in the second degree and assault in the second degree, respectively, in Counts I and II. The evidence supports finding the following facts. On October 26, 1993 Defendant stole Gloria Ehrler's purse in a parking lot at Boatmen's Bank. He parked next to her car and grabbed her purse through the open driver's side window of the stolen truck. She tried to retrieve her purse, but he began to drive away. The truck dragged her some distance before her purse strap broke and she fell to the ground. After her fall, Defendant drove over her stomach with the truck. Her injuries included broken ribs, a broken shoulder, a broken collarbone and facial lacerations.

Following the Ehrler incident, a police officer, after receiving a description of the truck and the driver involved, recognized Defendant and gave chase. The officer arrested Defendant and read his *Miranda* rights. After his rights were read, he said, "Yes, I did the robbery." Subsequently, he waived his *Miranda* rights in writing and agreed to make an audiotaped confession of each of the charged crimes. He signed a consent to search form concerning the truck, which had been towed to the police garage. Inside the truck, police found property taken from Ehrler's purse. Defendant testified at trial and acknowledged he confessed on audiotape. He admitted stealing each of the purses, stealing the truck, stealing the stained glass windows and injuring the victims. After the jury found Defendant guilty, he stipulated he was a prior and persistent offender and the trial court so found.

■ In Defendant's first of point on direct appeal, he submits the trial court erred when it denied his motion for a judgment of acquittal on Count IX, which charged felony stealing of stained glass windows. He argues the

state did not offer evidence to support a finding Neidel's stained glass windows had a market value or replacement cost of at least $150 when they were stolen.

We review the evidence together with all reasonable inferences favorable to the verdict and we ignore evidence and inferences contrary to the verdict. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence was more than sufficient to support the conviction on felony stealing concerning the stained glass windows. A Class C felony stealing is committed when "[t]he value of the property ... appropriated is one hundred fifty dollars or more." Section 570.030.2(1). Section 570.020 states:

> "Value" means the market value of the property at the time and place of the crime, or if such can not be reasonably ascertained, the cost of replacement of the property within a reasonable time after the crime. (3) When the value of the property can not be satisfactorily ascertained pursuant to the standards set forth ... its value shall be deemed to be an amount less than one hundred fifty dollars.

Defendant argues the state submitted no evidence of the original price of the windows, a market value of at least $150 when they were stolen or the cost of replacement. He relies on *State v. Foster*, 762 S.W.2d 51 (Mo. App.1988), which held that evidence of the cost for new windows was not probative on the issue of the market value or replacement cost of the windows taken. *State v. Foster*, 762 S.W.2d 51, 54 (Mo.App.1988). We now review different facts. Here, the evidence supports a finding that Neidel, the owner of the apartment building, replaced the custom-made antique windows of leaded stained glass with colored glass. Neidel testified that he was unable to afford identical replacement of the items stolen. However, despite using inferior items, he testified the cost of replacement was $2655. His testimony will support an inference the stolen windows had a value of more than $150.

■ Generally, a property owner may testify to the property's value and the jury

determines the weight and sufficiency of such testimony. *State v. Jenkins*, 776 S.W.2d 59, 62 (Mo.App.1989). Neidel testified the stained glass windows were about sixty years old, custom-made and he was unable to find replacements at antique shops. Moreover, he testified that new leaded, stained glass similar to that taken would have cost $1080. In contrast with *State v. Foster*, there is evidence of the property owner's opinion of the value of the stolen items and evidence the market value at the time of the taking was unascertainable because the items are unique and sold in a very limited market. The owner spent $2655 to replace the stolen items, which is not disputed. Thus, the evidence supports a finding that the value was sufficiently more than $150 required by the statute. Point denied.

■ In his second point on appeal, Defendant argues the trial court erred when it denied his motion for a judgment of acquittal on Count VI, charging robbery in the second degree.[2] He argues the state offered insufficient evidence to support a finding: (1) Bertha Young resisted the taking of her purse; and, (2) he used physical force to overcome Young's resistance to the taking of her purse.

Section 569.030 defines robbery in the second degree as a taking committed when a person forcibly steals property. Pursuant to section 569.010(1), a person "forcibly steals" and thereby commits robbery when in the course of stealing he:

> ... uses or threatens the immediate use of physical force upon another person for the purpose of: a) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or b) [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft[.]

In *State v. Butler*, 719 S.W.2d 35 (Mo.App. 1986), we held the evidence was sufficient to make a submissible case of robbery in a purse-snatching case where the evidence revealed the strap of the purse was wrapped

---

**2.** Defendant's *Point Relied On* contends insufficient evidence to support robbery in the first

degree. However, the actual charge was robbery in the second degree.

around either the victim's arm, her finger or both. *State v. Butler,* 719 S.W.2d 35, 37 (Mo.App.1986). The attachment of the purse to the victim's body and the evidence of the injury to the victim's finger were sufficient. *Id.* "Evidence of injury sustained as a result of the purse-snatching is 'the best possible proof of the violence committed on the robbery victim's person.'" *Id., quoting State v. Williams,* 532 S.W.2d 826, 828 (Mo.App. 1975).

Here, the evidence supports finding Defendant ran over Young with his truck, dragged her while the purse was caught in the truck and caused her physical injury. She lost consciousness, broke her hip in four places and sustained a fractured left shoulder. Defendant's argument, that there is no evidence of Young's resistance to the taking of her purse or evidence of physical force against Young for the purpose of overcoming such resistance, is frivolous. The evidence supports a finding the purse was attached to Young because she was dragged while the purse was caught in the truck; the force of a truck against her person constitutes "physical force" of a rather severe nature. Point denied.

▆▆▆ Defendant argues in his third point the court committed plain error when it instructed the jury with the state's verdict directors for assault in the second degree. He argues noncompliance with MAI–CR 3d 319.12, *Notes on Use* (7), and failure to define "serious physical injury." Defendant, to prevail on his claim of plain error with respect to an instruction, must show the jury was misdirected in a way that caused manifest injustice or a miscarriage of justice. *State v. Roddy,* 963 S.W.2d 313 (Mo.App. W.D.1997); *State v. Brokus,* 858 S.W.2d 298, 302 (Mo. App. E.D.1993). A showing of mere prejudice is not enough. *Id.*

The disputed instructions corresponded with two counts of assault in the second degree. Defendant argues the court properly instructed the jury on the definition of "recklessly" in Instruction 13, pursuant to MAI–CR 3d 333.000. However, he argues the state failed to submit, and the court failed to instruct the jury, on the definition of "serious physical injury" as mandated by MAI–CR 3d 319.12, *Notes on Use* (7), which provides:

(a) When any of the following terms are used in this instruction, the paragraph defining that term must be used: "dangerous instrument", "recklessly", "serious physical injury."

If any of these terms are used in more than one instruction, the paragraph defining that term need not be included in this instruction. In that case, such terms must be defined in a separate instruction using the definition in MAI–CR 3d 333.000.

MAI–CR 3d 333.49 defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." The court erred in not defining "serious physical injury."

The state argues there is no manifest injustice where defense counsel admitted serious injuries to Ehrler and Young. During closing arguments, defense counsel told the jury there was no dispute about the injuries of the victims. In fact, near the beginning of her closing argument, counsel stated, "[t]here is no dispute – there is no dispute ... there is no dispute about the injuries. You heard from all Ms. Mertzlufft, Miss Ehrler, Miss Fajardo and Mrs. Young. They told you and you could see the injuries. There is no dispute." Referring to Ehrler, counsel stated, "[h]er physical pains are devastating, you can see the wounds, but there are other wounds that you can't see."

Thus, there is no disputed fact issue that both Ehrler and Young suffered serious physical injury. The evidence supports findings that both were run over and dragged by the truck that Defendant drove. Ehrler has permanent damage and disfiguration to her shoulder. Young required surgery to implant a screw in her hip, has a permanent limp, an inability to walk straight and must use a cane. On these facts, Defendant was not prejudiced by the failure to submit the definition. We find no error, plain or otherwise. Point denied.

Defendant's last point argues the court erred when it denied his Rule 29.15 motion to

vacate, set aside and correct judgment and sentence, without an evidentiary hearing. He alleged ineffective assistance of counsel because his trial counsel failed to submit MAI–CR 310.10 after he testified and told the jury about prior convictions. MAI–CR 310.10 instructs the jury that a defendant's prior convictions may be considered for the sole purpose of deciding the defendant's credibility and the weight to be given his testimony.

■■■ We review pursuant to Rule 29.15(k), which limits review to "whether the findings and conclusions of the motion court are clearly erroneous" by leaving the appellate court with the "firm and definite impression that a mistake has been made." *State v. Schaal,* 806 S.W.2d 659, 667 (Mo. banc 1991) (citations omitted). We will order an evidentiary hearing if Defendant meets three requirements: (1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant. *White v. State,* 939 S.W.2d 887, 893 (Mo. banc 1997), *quoting State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993). A claim of ineffective assistance of counsel requires the movant to allege facts, not refuted by the record: (1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and, (2) that he was thereby prejudiced. *White,* 939 S.W.2d at 893. The required prejudice depends upon finding a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984); *see also State v. Fox,* 916 S.W.2d 356, 362 (Mo.App. E.D.1996). No evidentiary hearing is required if "the motion and the files and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(h).

■■■ Defendant argues the motion court erred when it deemed counsel's failure to submit the instruction "trial strategy," but

did not permit an evidentiary hearing to elicit any explanation from trial counsel as to why counsel did not request MAI–CR 310.10. A hearing would be required to support findings on *why* counsel did not request the instruction and to consider the possibility of prejudice in the context of counsel's testimony. However, we find Defendant is not entitled a hearing where the record conclusively demonstrates no prejudice which would affect the outcome of this trial had the instruction been given.

Defense counsel told the jury about Defendant's prior convictions during voir dire. She asked the panel if they could presume his innocence of the pending charges and give him a fair trial even if he testified and they learned he had two prior convictions, a 1993 conviction for fraudulent use of a credit device and a 1984 conviction for felony stealing. Subsequently, Defendant testified and confirmed his priors. He also admitted: (1) he snatched the purses as charged; (2) he stole the truck; (3) he stole the stained glass windows; and, (4) he caused physical injury. He admitted that he confessed to each crime in the statement and further acknowledged he should be punished. He has not alleged a single fact, which if proven, would show prejudice. In closing argument, he did not dispute the serious injuries suffered by Ehrler and Young. His argument that he did not commit robbery in the second degree as to two other victims ignores the fact that the jury found him guilty of lesser included offenses, felony stealing from a person, not the charged robberies.

Defendant was not prejudiced when he was convicted on the requested lesser charges. Moreover, in light of his admissions and confessions, he was not prejudiced for failure to request MAI–CR 310.10. The motion court did not error by finding no prejudice to Defendant. Point IV is denied.

In summary, the judgments and sentences on Counts I, IV, V and VIII, not the subject of this appeal.[3] They are final. We affirm the judgments and sentences of Counts II, VI, VII and IX, which we have reviewed.

---

**3.** Count III was dismissed.

Additionally, the denial of Rule 29.15 relief without an evidentiary hearing is affirmed.

ROBERT G. DOWD, Jr., C.J. and CHARLES B. BLACKMAR, Senior Judge, concur.