

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112475 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | Case No. 2111-CR02255-01 |
| | ) | |
| JOHN D. OTIS, | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Appellant. | ) | Filed: July 15, 2025 |

### Introduction

John D. Otis ("Otis") appeals his convictions of three counts of first-degree domestic assault, one count of armed criminal action, and one count of endangering the welfare of a child. Otis raises three points on appeal. In Point I, Otis argues the State presented insufficient evidence to prove beyond a reasonable doubt he was a persistent offender. In Point II, Otis argues the trial court plainly erred in finding him to be a persistent offender because *Erlinger v. United States*, 602 U.S. 821 (2024), the Supreme Court of the United States' recent decision, requires a unanimous jury to resolve any fact that enhances the prescribed range of a criminal defendant's sentence. Lastly, in Point III, Otis argues the trial court plainly erred in submitting Instruction No. 8, the verdict director for Otis' first-degree domestic assault charge in Count I, because it did not include the definition of "serious physical injury."

Beginning with Point II, we hold manifest injustice resulted when the trial court, instead of the jury, found Otis was a persistent offender. Given our disposition of Point II, Point I is rendered moot. Lastly, as to Point III, this Court holds the failure to submit the definition of "serious physical injury" did not constitute plain error.

Accordingly, the jury's findings of guilt on Counts I–V is affirmed. Furthermore, because Otis' range of punishment for the unclassified felony of armed criminal action was not affected by the trial court finding he was a persistent offender, his sentence on Count IV is affirmed. However, we vacate Otis' sentences on Counts I–III and V, and remand for the jury to determine Otis' persistent offender status and subsequent resentencing.

### Factual and Procedural Background

On July 17, 2021, Otis, his then wife, Cheronda White ("White"), and her minor son, P.R., left a restaurant around midnight. As White was driving, Otis suddenly became angry and started banging on the vehicle's dashboard. White pulled into a gas station and exited the vehicle with P.R. Otis got in the driver's seat and drove away.

Minutes later, Otis returned to the gas station and asked White to get into the vehicle. She refused. Otis subsequently drove the vehicle around the gas pumps and came to a slight stop in front of White and P.R. Next, he accelerated and struck White with the vehicle. P.R. was able to get out of the way and was not injured. The impact from the vehicle knocked White off her feet and onto the ground. As White was getting back on her feet, Otis circled around the gas pumps and struck White a second time, causing her to become pinned between the vehicle and the gas station's building. Otis then backed up the vehicle and fled the scene.

Shortly thereafter, Otis returned to the gas station on foot and grabbed a metal pole from the building's wreckage. He chased White down and hit her with the pole, punched her, and

stomped on her with his feet. White laid on the ground unconscious. Otis once again fled the area. P.R. stood over White while she laid on the ground until two bystanders took him toward the back of the building. White was eventually transported to the hospital. She sustained the following injuries: bleeding from her nostrils and one of her ears; a laceration on her forehead; missing a "chunk of hair or scalp[;]" cuts inside her lip and one of her ears; a bloodshot cornea; bruises near her mouth and chin; "big holes" in her knees; and black eyes. As a result of her head injuries, White now deals with memory lapses.

The State charged Otis with three counts of first-degree domestic assault (Counts I, II, and III), armed criminal action (Count IV), and endangering the welfare of a child in the first degree (Count V). Prior to trial, the State also charged Otis as a prior and persistent offender and submitted certified copies of Otis' prior convictions from St. Louis County for felony assault and armed criminal action which occurred on June 19, 2009, and Madison County, Illinois for criminal trespass to a residence which occurred on August 4, 2020. The trial court found Otis was a prior and persistent offender.

On November 28, 2023, the matter proceeded to trial. In particular, the State presented a video from the gas station's surveillance system that captured the crimes and it was played to the jury. At the close of evidence, fourteen jury instructions were submitted. Pertinent to this appeal, Instruction No. 8 was the verdict director for Count I, which was related to the first time Otis struck White with his vehicle. The instruction did not include the definition of "serious physical injury." Otis did not object to the submission of this instruction.

The jury found Otis guilty of all the charges. The trial court sentenced Otis to life in prison on each first-degree domestic assault conviction (Counts I–III), fifteen years' imprisonment for the armed criminal action conviction (Count IV), and seven years' imprisonment for the

3

endangering the welfare of a child conviction (Count V). The trial court ordered Counts I–III to be served concurrently, Count IV to run consecutive to Counts I–III, and Count V to run consecutive to Counts I–IV.

This appeal follows.

## Discussion

### Points on Appeal

Otis raises three points on appeal. For ease of analysis, we discuss his points out of order and only reach the merits of Points II and III.

### *Standard of Review*

Otis concedes Points II and III were not properly preserved. "Generally, this Court does not review unpreserved claims of error." *State v. Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024) (quoting *State v. Brandolese*, 601 S.W.3d 519, 525 (Mo. banc 2020)). However, we have discretion to review plain errors. *Id.* "Plain error review is a two-step process." *State v. Jasso*, 688 S.W.3d 804, 808 (Mo. App. E.D. 2024). "The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023) (citation omitted). "Not every prejudicial error, however, constitutes plain error, as plain errors are 'evident, obvious, and clear.'" *Jasso*, 688 S.W.3d at 808 (citation omitted). "If plain error is found under the first step, the court must then proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *State v. Caves*, 700 S.W.3d 596, 599 (Mo. App. E.D. 2024) (internal quotations and citation omitted). "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of

4

establishing manifest injustice." *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (citation omitted).

<em>Analysis for Point I and Point II</em>

In Point I, Otis argues the State failed to present sufficient evidence that he was a persistent offender. In Point II, Otis argues the trial court plainly erred in finding him to be persistent offender because *Erlinger* requires a jury, not a judge, to determine whether he committed two or more felonies at different times as the resolution of this factual determination enhanced his range of punishment. Applying *Erlinger*, this Court holds Otis had a constitutional right to have the jury, rather than the trial court, resolve the facts that enhanced his range of punishment pursuant to Missouri's persistent offender statute. Given our disposition of Point II, Point I is rendered moot.

A. Jurisdiction and Preservation of Constitutional Issue

In Point II, Otis argues the Fifth and Sixth Amendments of the United States Constitution entitle him to have a jury determine any fact that enhances his sentence despite § 558.021 allowing the trial court to make this determination.[1] As an initial matter, we must first determine whether we have jurisdiction to address the merits of this point on appeal. *State v. Conner*, 583 S.W.3d 102, 113 (Mo. App. E.D. 2019). Pursuant to the Missouri Constitution, the Supreme Court of Missouri is vested "with exclusive appellate jurisdiction in all cases involving the validity of a statute." *State v. Perkins*, 600 S.W.3d 838, 848 (Mo. App. E.D. 2020) (citation omitted). However, "[i]f a constitutional claim has not been properly preserved for appellate review, jurisdiction lies in the appellate court rather than the Supreme Court of Missouri." *Id.* (citation omitted). As discussed, Otis concedes he did not preserve Point II for appellate review. "Because [Otis'] claim was not properly preserved, we have jurisdiction to address the merits of this constitutional claim

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. (2021).

under plain error review." *Id.* (internal quotations and citation omitted); *see also Conner*, 583 S.W.3d at 113 (reviewing the appellant's unpreserved constitutional claim for plain error); *State v. Emanuel*, 683 S.W.3d 348, 355 (Mo. App. S.D. 2024) (same).

B. Applying *Erlinger*

This Court is bound by the supreme law of the land as declared by the Supreme Court of the United States. *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 603 (Mo. App. E.D. 2019); *State v. Nunes*, 546 S.W.2d 759, 763 n.2 (Mo. App. 1977). Additionally, it is well-established that "a new rule for conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, *pending on direct review or not yet final…." See State v. Whitfield*, 107 S.W.3d 253, 266 (Mo. banc 2003) (emphasis in original), *abrogated on other grounds by State v. Wood*, 580 S.W.3d 566 (Mo. banc 2019) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Here, *Erlinger* was decided while Otis' direct appeal was pending, thus, this Court must apply *Erlinger's* holding to the present matter.[2]

In *Erlinger*, the defendant was charged with being a felon unlawfully in possession of a firearm, which ordinarily carried a sentence of up to ten years in prison. *Erlinger*, 602 U.S. at 825. He was also charged under the Armed Career Criminal Act ("ACCA"). *Id.* Pursuant to the ACCA, "if the defendant has three prior convictions for 'violent felon[ies]' or 'serious drug offense[s]' that were 'committed on occasions different from one another,'" the prison term is increased to a minimum of fifteen years and a maximum of a life sentence. *Id.* (quoting 18 U.S.C. § 924(e)(1) (2012 ed.)). The district court found "it more likely than not … [the defendant's] past included three ACCA-qualifying offenses committed on three different occasions" and imposed a fifteen-year sentence as required by the ACCA. *Id.* at 826.

---

[2] The State concedes *Erlinger* applies to this matter.

6

Following two Seventh Circuit decisions which held two of the three offenses the district court relied on to enhance the defendant's sentence no longer qualified under the ACCA, the defendant's sentence was vacated and the matter was remanded for a new sentencing hearing. *Id.* At the sentencing hearing, the prosecutors continued to pursue a fifteen-year ACCA sentence and pointed to a new set of prior convictions stemming from four burglaries the defendant committed when he was eighteen years old. *Id.* The defendant argued the Fifth and Sixth Amendments entitled him to have a jury assess the facts surrounding whether he committed his prior burglaries during a single episode or on distinct occasions. *Id.* at 827. The district court rejected the defendant's request for a jury and again sentenced him to fifteen years' imprisonment after it found each of the defendant's burglaries occurred on distinct occasions. *Id.* On appeal, the defendant asserted the same argument, but the Seventh Circuit did not disturb the district court's sentence. *Id.* at 827–28.

The Supreme Court of the United States granted certiorari. *Id.* at 821. The issue before the Supreme Court was "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Id.* at 825. The Supreme Court referenced its two previous decisions – *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013) – and reiterated that it "has repeatedly cautioned that trial and sentencing practices must remain within the guardrails provided by [the Fifth and Sixth Amendments]." *Erlinger*, 602 U.S. at 822.[3] In line with those

---

[3] To be clear, *Erlinger* expanded upon the holdings of *Apprendi* and *Alleyne*. In *Apprendi*, the issue before the Supreme Court of the United States was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 469. The Supreme Court held "[t]he Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 466. Additionally, in *Alleyne*, the defendant was charged with using or carrying a firearm in relation to a crime of violence. *Alleyne*, 570 U.S. at 99. The charge ordinarily carries a five-year minimum sentence; however, the term of imprisonment increases to a seven-year minimum "if the firearm is brandished[.]" *Id.* (citation omitted). The district

cases, the Supreme Court echoed that "[v]irtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Id.* at 834 (quoting *Apprendi,* 530 U.S. at 490). The Supreme Court noted "Judges may not assume the jury's fact[-]finding function for themselves" because "it would intrude on a power the Fifth and Sixth Amendments reserve to the American people." *Id.* at 834–35. The Supreme Court held "[t]he Fifth and Sixth Amendments require a unanimous jury to make the determination beyond a reasonable doubt that a defendant's past offenses were committed on separate occasions for ACCA purposes." *Id.* at 821.

Turning now to the matter before us, §§ 558.016 and 558.021 discuss the extended terms of punishment a defendant is exposed to based on their prior criminal conduct.

In relevant part, § 558.021 provides:

1. The court shall find the defendant to be a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender if:

   (1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and

   (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and

---

court imposed a seven-year sentence after it found by a preponderance of the evidence that the defendant brandished the firearm. *Id.* at 117. The Supreme Court granted certiorari and noted that "[b]ecause the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt." *Id.* The Supreme Court held the defendant's Sixth Amendment right was violated when the judge, rather than the jury, found the defendant was brandishing a firearm. *Id.* Although *Erlinger* relied on the principles established in *Apprendi* and *Alleyne*, pursuant to *Erlinger,* a jury is required determine whether a defendant committed past offenses on separate occasions whenever this factual determination has the effect of increasing a defendant's range of punishment. *Erlinger*, 602 U.S. at 821. It is noteworthy that numerous cases have been vacated and remanded for reconsideration in light of *Erlinger. People v Perry*, 85 Misc 3d 982, 990 [Sup Ct 2024]. Moreover, the fact that Missouri's persistent offender statutes and other similar statutes throughout the United States allow a trial court to determine the facts required to support enhancing a defendant's sentence as a persistent offender despite *Apprendi* and *Alleyne's* precedent further demonstrates that *Erlinger* expanded upon the holdings of these two cases.

(3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender.

In addition, in pertinent part, § 558.016 provides:

1. The court may sentence a person who has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a prior offender or a persistent misdemeanor offender. The court may sentence a person to an extended term of imprisonment if:

> (1) The defendant is a persistent offender or a dangerous offender, and the person is sentenced under subsection 7 of this section;
>
> ….

2. A **"prior offender"** is one who has been found guilty of one felony.[4]

3. A **"persistent offender"** is one who has been *found guilty of two or more felonies committed at different times*.

….

7. The court shall sentence a person, who has been found to be a persistent offender or a dangerous offender, and is found guilty of a class B, C, D, or E felony to the authorized term of imprisonment for the offense that is one class higher than the offense for which the person is found guilty.

(emphasis added).

Otis does not dispute he was convicted of felonies in Missouri for assault and armed criminal action committed on June 19, 2009, and, therefore, takes no issue with the trial court finding he was a **prior offender**. As such, we will only analyze the trial court's determination that Otis was a **persistent offender**.

---

[4] Pursuant to § 558.016.7, a trial court finding a defendant to be a **prior offender** does not enhance the defendant's range of punishment.

It is apparent § 558.016's persistent offender provisions mirror the ACCA statute considered in *Erlinger*. *Compare* § 558.016 *with* 18 U.S.C. § 924(e)(1). In particular, like the ACCA, which requires a finding that three felonies were committed on different occasions, *see* 18 U.S.C. § 924(e)(1), the Missouri persistent offender statute requires the defendant to be "found guilty of two or more felonies committed at different times." § 558.016.3. Additionally, similar to a defendant's range of punishment being enhanced under the ACCA, *see* 18 U.S.C. § 924(e)(1), § 558.016.7 has the effect of increasing a defendant's range of punishment to an authorized term of imprisonment one class higher than the offense of which they are found guilty.

Although the trial court followed Missouri's persistent offender statutes during Otis' trial, the Supreme Court of the United States has stated, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Henderson v. United States*, 568 U.S. 266, 273 (2013) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). Given *Erlinger's* holding, it is "evident, obvious, and clear" the trial court, rather than the jury, determining Otis committed the two felonies at different times facially establishes substantial grounds to believe manifest injustice has resulted. *See Boyd*, 659 S.W.3d at 926; *Jasso*, 688 S.W.3d at 808. As such, the first step of plain error review is met.

We turn to the second step of plain error review, which requires Otis to demonstrate manifest injustice resulted from the trial court making this factual determination. *See Caves*, 700 S.W.3d at 599; *Johnson*, 524 S.W.3d at 513. Otis argues the fact he was improperly sentenced to life in prison on Counts I–III resulted in manifest injustice. Conversely, the State asserts Otis cannot demonstrate manifest injustice as he failed to show the jury would not have found his prior felonies were committed at different times. The State points out Otis' prior felonies were

10

committed approximately eleven years apart in two different states and involved different victims. The State concludes its argument by asserting "there was no reason to believe, from the character of the Missouri and Illinois offenses, that they were in any way intertwined or part of a single episode."

This Court notes *Erlinger* explicitly rejected an argument similar to the one made by the State. Specifically, *Erlinger* did not "question *amicus's* assessment that in many cases the occasions inquiry will be straightforward." *Erlinger*, 602 U.S. at 842 (quotations omitted). However, in rejecting the argument, the Supreme Court went on to explain:

> Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions. **But none of that means a judge rather than a jury should make the call.** There is no efficiency exception to the Fifth and Sixth Amendments. In a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers **"'regardless of how overwhelmin[g]'" the evidence may seem to a judge.**

*Id.* (emphasis added) (citation omitted).

Here, the State had the burden of proving Otis committed two or more felonies at different times beyond a reasonable doubt to the jury as this factual finding had the effect of increasing Otis' range of punishment. *See id.* at 834 (stating a unanimous jury must resolve any fact that increases a defendant's range of punishment beyond a reasonable doubt). Regardless of whether it may appear "straightforward," Otis was entitled to have a jury determine these facts rather than the trial court. *See id.* at 842. *Erlinger* draws no distinction between an effortless and complicated fact-finding process when such facts have the effect of increasing a defendant's sentence. It bears repeating "[t]here is no efficiency exception to the Fifth and Sixth Amendments." *Id.* Pursuant to *Erlinger*, unless waived by a defendant, a jury must always determine whether a criminal

defendant committed two or more felonies at different times before a defendant is found to be a persistent offender.

In this matter, it is undisputed the trial court determined Otis committed two or more felonies at different times. By reason of this factual finding made by the trial court, the range of punishment Otis was subjected to on Counts I–III increased from five to fifteen years' imprisonment, *see* § 558.011.1(2), to a range of ten to thirty years' imprisonment, or life in prison, *see* § 558.011.1(1), and he received three concurrent life sentences. Manifest injustice could not be any clearer. Additionally, Otis' punishment on Count V increased from a term not to exceed seven years, *see* § 558.011.1(4), to a range of three to ten years' imprisonment. *See* § 558.011.1(3). It is immaterial Otis received a seven-year sentence on Count V given the minimum punishment he was subjected to increased. *See State v. Perry*, 645 S.W.3d 713, 716–17 (Mo. App. S.D. 2022) (holding the trial court rather than the jury making the determination that the defendant had previously committed an act that would qualify him as a predatory sexual offender was plain error resulting in manifest injustice because the determination enhanced the defendant's minimum punishment).

Therefore, this Court holds the trial court finding Otis was a persistent offender resulted in manifest injustice and Otis is entitled to have a jury make that determination before being sentenced as a persistent offender. *See Erlinger*, 602 U.S. at 821.

Based on the foregoing, Point I is rendered moot given the disposition of the claim raised in Point II. "A claim is rendered moot if something occurs that makes a court's decision unnecessary." *State v. Hicks*, 221 S.W.3d 497, 505 (Mo. App. W.D. 2007) (internal quotations and citation omitted). Here, determining whether the State failed to present sufficient evidence to show Otis was a persistent offender would be unnecessary and have no effect because, on remand, the

12

State will once again need to submit evidence to support its position and the jury will then make the final determination as to Otis' persistent offender status.

Point I is moot, and Point II is granted.

*Analysis for Point III*

In Point III, Otis argues the trial court plainly erred in submitting Instruction No. 8 – the verdict director related to the first time he struck White with his vehicle – because it did not include the definition of "serious physical injury."[5] Notably, none of the verdict directing instructions for the three domestic assault charges (Instructions No. 8, 9, and 10) contained the definition of "serious physical injury." However, Otis only focuses on Instruction No. 8 and argues the omission of the definition relieved the State of its burden to prove an essential element of first-degree domestic assault as the jury might not infer he intended "to cause *serious physical injury* as opposed to merely *some injury*" when he struck White the first time. (emphasis in original). We exercise our discretion to review this argument for plain error. *See Jackson-Bey*, 690 S.W.3d at 186. This Court holds the absence of the definition of "serious physical injury" did not constitute plain error as the jury could easily infer Otis intended to cause White "serious physical injury" when he came to a slight stop in front of her and then accelerated his vehicle and struck her.

"Instructional error seldom rises to the level of plain error." *State v. Ausler*, 697 S.W.3d 24, 29 (Mo. App. E.D. 2024) (citation omitted). "To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice." *State v. O'Keefe*, 681 S.W.3d 615, 626 (Mo. App. E.D. 2023) (citation omitted). "[T]he defendant

---

[5] Otis' argument regarding reversal of the jury's finding of guilt on his armed criminal action charge (Count IV) relies on the disposition of Count I. Based on our analysis in Point III, this argument fails. Additionally, Otis makes no argument regarding reversal of the jury's findings of guilt on Counts II, III, and V. As such, any claim related to reversing the finding of guilt on those counts is abandoned as it is not within our province to analyze arguments that are not asserted. *See State v. Wright*, 376 S.W.3d 696, 704–05 (Mo. App. E.D. 2012).

must show that the trial court 'so misdirected or failed to instruct the jury' that the error affected the jury's verdict." *State v. Aldana*, 681 S.W.3d 586, 596 (Mo. App. W.D. 2023) (quoting *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010)).

Pursuant to § 565.072.1, "[a] person commits the offense of domestic assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to a domestic victim…." In Missouri, serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" *State v. Madrigal*, 652 S.W.3d 758, 766 (Mo. App. E.D. 2022) (quoting § 556.061(44)). Instruction No. 8 is derived from MAI-CR 419.73, the Missouri approved instruction for first-degree domestic assault. MAI-CR 419.73's Notes on Use No. 8 expressly provides as follows:

> When the following term is used in this instruction, the paragraph defining that term must be used: "serious physical injury." If this term is used in more than one instruction, the paragraph defining that term need not be included in this instruction. In that case, such terms must be defined in a separate instruction.

"A trial court's failure to comply with the MAI-CR and its corresponding Notes on Use raises a presumption of prejudicial error." *Madrigal*, 652 S.W.3d at 770. As such, the State concedes the definition of "serious physical injury" was required to be given and the trial court erred in not doing so.

However, Otis has failed to demonstrate the omission of the definition of "serious physical injury" affected the jury's verdict as required to reverse for plain error. *See Aldana*, 681 S.W.3d at 596. Here, the video from the gas station showed Otis deliberately lined up his vehicle a few feet in front of White. He then accelerated and struck her with the vehicle. The impact knocked White off her feet and onto the ground. It is clear to this Court that Otis used the vehicle in a way that was readily capable of causing death or serious physical injury. *See State v. Williams*, 126 S.W.3d

14

377, 384 (Mo. banc 2004) (stating a car becomes inherently dangerous when used in circumstances where it is readily capable of causing death or serious physical injury). Because the jury could infer White was under a substantial risk of death, disfigurement, or protracted bodily injury when Otis accelerated the vehicle into her, the failure to instruct the jury on the definition of "serious physical injury" did not affect their verdict. *See State v. King,* 988 S.W.2d 663, 667 (Mo. App. E.D. 1999) (holding the defendant was not prejudiced by the failure to submit the definition of "serious physical injury" because the facts showed the victims were run over by the defendant's truck and suffered serious injuries); *State v. Ware*, 770 S.W.2d 249, 251 (Mo. App. E.D. 1989) (holding the failure to define "serious physical injury" was not plain error because a jury could infer the victims were under a risk of "serious physical injury" from fact that the defendant used a gun to kidnap and rob them). Accordingly, the failure to submit the definition of "serious physical injury" did not constitute plain error. *See Aldana,* 681 S.W.3d at 596.

Point III is denied.

## Conclusion

The sentences imposed on Counts I–III and V are vacated. The case is remanded for determination by a jury as to Otis' persistent offender status and subsequent resentencing. The trial court's judgment is affirmed in all other respects, including the findings of guilt on Counts I–V and the sentence on Count IV.

_____
Michael S. Wright, Judge


Robert M. Clayton III, J. concurs.
John P. Torbitzky, C.J. dissents in a separate opinion.

15



# In the Missouri Court of Appeals
# Eastern District

<u>**DIVISION FOUR**</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112475 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County, Missouri |
| v. | ) | Cause No. 2111-CR02255-01 |
| | ) | |
| JOHN D. OTIS, | ) | Honorable Daniel Pelikan |
| | ) | |
| Appellant. | ) | July 15, 2025 |

**DISSENTING OPINION**

Otis challenges the constitutional validity of § 558.021.1, RSMo 2016,[1] claiming the jury should have made the factual finding that his prior felonies were committed at different times. Otis asserts that his constitutional rights were violated because this finding was made by the circuit court rather than the jury. Otis acknowledges he did not challenge the statute's constitutional validity in the circuit court and requests plain error review.

*Waiver*

The principal opinion explains that while Otis's appeal was pending, the United States Supreme Court issued *Erlinger v. United States*, 602 U.S. 821, 834, 144 S. Ct. 1840, 1851, 219 L. Ed. 2d 451 (2024), holding that a jury must resolve any fact which extends a defendant's

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

range of punishment. The principal opinion is premised upon the fact that *Erlinger* changed the law and because of this change, Otis was unable to object at trial as to who must decide the facts which could extend his range of punishment.

*Erlinger*, however, did not change the law; it merely reiterated the Supreme Court's consistent holdings that the Constitution requires a jury to resolve any fact which extends a defendant's range of punishment. *Erlinger*, 602 U.S. at 834; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2363, 147 L. Ed. 2d 435 (2000) (reaffirming its statements in *Jones v. United States*, 526 U.S. 227, 252-53, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) that it is unconstitutional for the legislature to prevent a jury from determining all facts which may extend a defendant's range of punishment) and *Alleyne v. United States*, 570 U.S. 99, 117, 133 S. Ct. 2151, 2163-64, 186 L. Ed. 2d 314 (2013) (holding the court's factual finding that extended the defendant's range of punishment violated the Sixth Amendment). In fact, *Erlinger* described the principles at issue in *Apprendi* and *Alleyne* as "firmly entrenched," noting that the Court had already "overruled several decisions inconsistent with them." *Erlinger*, 602 U.S. at 833-34.[2] Similarly, Missouri courts have routinely applied the precedent set forth in *Apprendi* and *Alleyne*, and recognized that a jury must find the necessary facts to extend a defendant's sentence. *See State v. Wood*, 580 S.W.3d 566, 583 (Mo. banc 2019) and *State v. Johnson*, 524 S.W.3d 505, 512-13 (Mo. banc 2017). *Erlinger* did not change the law or create a new argument for Otis. It simply made his argument stronger.

Because the law that a jury must be the fact-finder to determine whether to extend a term of punishment did not change with *Erlinger*, Otis could have objected at trial. He did not.

---

[2] The Court stated, "Really, this case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine." *Erlinger*, 602 U.S. at 835.

2

Further, because Missouri courts recognize that a jury must find the necessary facts to extend a defendant's sentence, this is not a case of first impression.[3]

"[C]onstitutional issues must be raised at the earliest possible opportunity to be preserved for appellate review." *State v. Onyejiaka*, 671 S.W.3d 796, 798 (Mo. banc 2023).[4] Failure to challenge the constitutional validity of a statute at the first opportunity results in a waiver of that challenge. *Ross v. State*, 335 S.W.3d 479, 480 (Mo. banc 2011). Otis concedes this issue was not raised below. Accordingly, I would find that Otis's failure to challenge the constitutional validity of § 558.021.1 at trial waived this constitutional issue on appeal.

*Plain Error*

I also dissent because I disagree with the principal opinion's holding that Otis suffered a manifest injustice justifying reversal for plain error. Plain error review is discretionary and should not be used to review every unpreserved allegation of error. *State v. Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024). This Court should decline to engage in plain error review unless manifest injustice or a miscarriage of justice is shown. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020).

---

[3] This is not "the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Henderson v. United States*, 568 U.S. 266, 273, 133 S. Ct. 1121, 1127, 185 L. Ed. 2d 85 (2013) (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993)). Nor is it the case that at the time of trial the law was settled and changed by the time of the appeal, which would classify the alleged error as "plain" error on appeal. *Id.* (quoting *Johnson v. United States,* 520 U.S. 461, 117 S. Ct. 1544, 137 L.Ed.2d 718 (1997)).

[4] Challenging "the constitutionality of a statute is of such dignity and importance that the record touching such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal." *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 429 (Mo. banc 2016) (quoting *Land Clearance for Redevelopment Auth. of Kansas City, Mo. v. Kan. Univ. Endowment Ass'n*, 805 S.W.2d 173, 176 (Mo. banc 1991)).

3

The principal opinion's analysis of manifest injustice inappropriately focuses on the sentence that Otis received rather than the claim he raised. The principal opinion holds that because Otis's allowable sentence was improperly increased, manifest injustice "could not be any clearer." If that was Otis's argument and it was borne out by the facts, I would be inclined to agree. *See, e.g., State v. Hamilton*, 328 S.W.3d 738, 742 (Mo. App. 2010) (finding manifest injustice in improperly *sentencing* the defendant); *State v. Collins*, 290 S.W.3d 736, 744 (Mo. App. 2009); *State v. Dixon*, 24 S.W.3d 247, 250 (Mo. App. 2000).

However, unlike the principal opinion, Otis does not argue that his designation as a persistent offender is improper.[5] Instead, he argues that his sentence *might* have been different if a jury had been permitted to make that determination. As a result, this Court's manifest injustice analysis should not focus on the sentence Otis might have received, but instead on who made the determination.

Otis "bears the burden to show a manifest injustice has resulted from the error at issue." *State v. Tate*, 708 S.W.3d 483, 490 (Mo. banc 2025). The principal opinion seems to hold that merely because the circuit court, and not a jury, made the factual determination, Otis met the standard demonstrating manifest injustice. The applicable authority directing our review of constitutional error undermines this holding.

Had Otis's argument been properly raised and preserved for appeal, it would have been subject to harmless error analysis. "Errors that 'infringe upon the jury's factfinding role' are

---

[5] In a separate point, Otis does argue that the State presented insufficient evidence to support the circuit court's finding as to one of Otis's felonies. The principal opinion holds that this issue is moot given its holding regarding *Erlinger*. I disagree that the issue is moot. A finding in Otis's favor would warrant reversal and resentencing as a prior offender regardless of who found the facts. Because the principal opinion has not analyzed the merits of the claim, however, I will not either.

4

generally 'subject to harmless-error analysis.'" *United States v. Butler*, 122 F.4th 584, 589 (5th Cir. 2024) (quoting *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 1838, 144 L. Ed. 2d 35 (1999)). Sixth Amendment errors under *Apprendi*, *Alleyne*, and *Erlinger* have all generally been subject to constitutional harmless-error analysis. *Id.* Under this analysis, "[a] properly-preserved federal constitutional error in a criminal trial does not require reversal and remand for a new trial if the reviewing court determines that the error was harmless beyond a reasonable doubt." *State v. Minner*, 256 S.W.3d 92, 96 (Mo. banc 2008) (internal quotations omitted). As a result, even were this point properly preserved, Otis would not be entitled to reversal merely because the judge served as fact-finder.

This is even more true when reviewing for plain error. Based on controlling precedent, plain error can only serve as a basis for reversal when the error is outcome determinative. *State v. Phillips*, 687 S.W.3d 642, 650 (Mo. banc 2024). And, as noted, the defendant bears the burden of persuasion. I do not believe Otis has carried that burden.

Otis alleges that it was plain error for the circuit court, rather than the jury, to determine that he was a persistent offender. A persistent offender "is one who has been found guilty of two or more felonies committed at different times …." Section 558.016.3, RSMo Supp. 2024. "Courts may infer that prior felonies were committed at different times when the record supports a finding beyond a reasonable doubt that the prior felonies were committed at different times." *State v. Johnson*, 402 S.W.3d 182, 188 (Mo. App. 2013). The State must demonstrate the multiple felonies were not "committed as a part of a continuous course of conduct in a single episode." *State v. Sanchez*, 186 S.W.3d 260, 263-64 (Mo. banc 2006) (reversing persistent offender status because the state failed to prove the two felonies committed on the same night in the same location were not a continuous course of conduct).

While Otis received an extended term of punishment, he fails to demonstrate that it is more likely than not he would have received a lesser sentence had the jury been tasked with determining his persistent offender status. Otis offers nothing other than mere speculation to support his manifest injustice claim. Otis does not allege, nor did he present any argument, that the jury would find two different felonies occurring more than a decade apart against different victims in different states would be a single continuous course of conduct. Accordingly, I believe Otis is unable to demonstrate error which would warrant plain error relief.[6]

### Conclusion

I find Otis's failure to object to § 558.021.1's constitutional validity at trial waived plain error review. Further, I do not believe Otis is able to prove there was a constitutional violation that resulted in manifest injustice. I would affirm the circuit court's judgment.

_____

John P. Torbitzky, Judge

---

[6] The principal opinion misreads *Erlinger* as having rejected this result. But *Erlinger* never reached this issue. Although, *Erlinger* held that the district court erred in making factual determinations under the ACCA, it remanded the case to the court of appeals to assess the effect of that error. In other words, *Erlinger* reiterated the right to have a jury make these determinations, but it made no holding as to what appellate courts should do when that right is violated. In this case, that question is answered by Missouri's well-worn plain error review standard.